Leticia Nanette JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–01–00505–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 23, 2002.

---

**2.** The previous Rule 2(b) is substantially the same as Rule 2.

Gerald B. Scheve, Houston, for appellants.

Jessica Jinx D'Anna, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Leticia Nanette Jackson, pled nolo contendere to possession of marijuana after her motion to suppress was denied. She also pled true to two prior felony convictions, and was sentenced to twenty-five years' imprisonment. This appeal followed. In two issues, she contends that the court erred in overruling her motion to suppress because: (1) the arresting officers lacked reasonable suspicion to detain; and (2) the search of her bag was not consensual. We affirm.

### I. Factual Background

Officer Marsha Todd of the Houston Police Department and Deputy Greg Raider of the Harris County Sheriff's Department arrested appellant on March 22, 2000, at Houston Intercontinental Airport.

Both officers and appellant testified at the hearing on appellant's motion to suppress. The officers' account of the events differed in certain respects from appellant's account.

Officer Todd and Deputy Raider testified that several factors brought appellant to their attention. She was walking in a nervous manner, looking behind her and from side-to-side as if looking for someone following her or the police. When she sat in the departure area, she put her bag between her legs as if very protective of it and wrung her hands in a nervous fashion. She then walked away from the bag and got in line at the ticket counter, but continually looked at the bag. The officers agreed that persons at the airport are protective of their bags, but explained that there is a difference between being protective and overly protective. Additionally, a person distancing herself from her bag after being overly protective of it is considered to be furtive behavior. Appellant then went back to the bag without approaching the ticket counter. The officers believed that appellant had seen them looking at her and attempted to distance herself from them. She then took the bag and walked to the food court area.

The officers decided to approach appellant due to the totality of the circumstances. Officer Todd advised appellant that she was a police officer, displayed her badge and identification, and asked if she could speak with appellant. Appellant replied, "yes." Officer Todd did not indicate that appellant did not have to talk to her. Officer Todd asked appellant where she was going. Appellant responded Philadelphia. Officer Todd asked whether she was going on business or pleasure. Appellant responded she was, "just going." Officer Todd asked if appellant had luggage. Appellant said that she did. At that point, appellant had walked about seven to ten feet from her bag. Officer Todd stood in front of appellant facing her during the conversation. As they spoke, appellant would step farther away from the bag toward Officer Todd causing Officer Todd to have to step back. During this conversation, Officer Todd asked to look at appellant's ticket and identification. She looked at them and gave them back immediately, although she later took them after the arrest. Appellant was traveling on a buddy pass. While that fact was not unusual by itself, the officers had made several recent arrests of narcotics couriers who were traveling on buddy passes.

Officer Todd asked if appellant was carrying any packages for anyone else. Appellant responded that she was not. Officer Todd asked appellant if she was carrying narcotics in her bag or on her person to which appellant replied, "no." Officer Todd then asked appellant for consent to search her bag and her person. Officer Todd told appellant, "you do not have to let me search your bag or your person." Appellant looked away as if she knew she was about to be arrested, and replied that they could look if they wanted to. Deputy Raider tried to open the bag, but it was locked, so he broke the zipper. He did not take appellant's bag until she consented to the search. He observed a large bundle wrapped in cellophane in the bag, which turned out to be approximately 37 pounds of marijuana. Then appellant said "Cheryl gave it to me. I'm going to jail, aren't I?" Officer Todd informed appellant that she was under arrest and read her the Miranda warning.

Both officers testified they were dressed in plain clothes and did not display a weapon. Deputy Raider did not ask any questions. He testified that although he is taller than appellant, he did not "tower" over appellant because he stood behind

Officer Todd. The officers did not physically touch or restrain appellant. They never took appellant into a secluded area. Appellant appeared intelligent and able to understand the questions. Neither officer threatened appellant in any manner. Officer Todd described her own tone of voice as very normal, quiet, and not threatening. She did not threaten to handcuff appellant before the bag was searched. Instead, after appellant was arrested, Officer Todd advised her that she did not want to handcuff her and embarrass her, so she said, "if you don't act silly, we won't put handcuffs on you."

Appellant testified that the events occurred as follows: Her gate changed as is common when traveling with a buddy pass. While she was on her way to the other gate, Officer Todd stopped her in the food court area and asked how she was doing. At first, she was reluctant to talk and paused when Officer Todd spoke to her, but she spoke after Officer Todd identified herself and said they were doing an investigation. Officer Todd asked appellant where she was traveling and how long she planned to stay. Appellant replied she was going to Philadelphia and planned to stay a day or two. Officer Todd asked to see her identification and buddy pass. Officer Todd looked at them and gave them back.

Officer Todd asked appellant if she could search her bag. Appellant asked why, to which Officer Todd replied they were having an investigation at the airport. Appellant testified that she said "no" and never told Officer Todd that she could search her bag. According to appellant, Officer Todd never told her that she did not have to consent to the search of her bag. From the tone of Officer Todd's voice, it seemed to appellant that she had to comply. She described Officer Todd's tone of voice as not friendly and "like, I'm police; I'm go-

ing to search you." While appellant's hand was still on the handle of her bag, Deputy Raider, who was behind appellant all along, took it from her. He lifted it, then let it hit the ground, and said, "yeah, there's something in there." He opened the bag at some point after that. At one point, appellant testified that Officer Todd asked her if she was going to cooperate, said, "don't try anything silly" and said she did not want to handcuff her in the airport. However, appellant later testified that Officer Todd told her not to act silly after she was arrested. Appellant agreed that neither officer ever touched her, displayed a weapon or took her to a secluded area until she was taken to their truck after her arrest. Appellant testified she was intoxicated at the time of this encounter.

## II. Motion to Suppress

### A. Standard of Review

When a defendant has entered into a plea bargain and appeals from denial of a pretrial motion to suppress evidence, the appellate court must apply a two-step inquiry before reaching the merits of the denial of the motion. *Gonzales v. State*, 966 S.W.2d 521, 524 (Tex.Crim.App. 1998). The appellate court must: (1) identify the "fruits" which the trial court did not suppress; and (2) determine whether these fruits have been "used" by the State in securing the defendant's plea-bargained conviction. *Id.* The defendant is not required to have the evidence sought to be suppressed admitted into evidence at a suppression hearing, but it must be clear from the appellate record what "fruits" are complained of. *Id.* Furthermore, the evidence has been "used" in securing the conviction so long as it may be concluded that it would have in any measure inculpated the accused. *Id.* at 523. If these two requirements are not met, the appellate court need not address the claimed

error in failing to suppress evidence. *Id.* at 524. It is clear from the record in this case that the fruit sought to be suppressed was the marijuana found in appellant's bag, and this evidence was used in securing the conviction because it would have inculpated appellant. Therefore, we will address the merits of the appeal.

The appropriate standard for reviewing a trial court's ruling on a motion to suppress evidence is articulated in *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997). The appellate court affords almost total deference to a trial court's determination of the historical facts that the record supports. *Id.* at 89. Furthermore, the appellate court should afford the same amount of deference to the trial court's rulings on application of law to fact questions, referred to as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* However, the appellate court may review *de novo* mixed questions of law and fact not falling within this category. *Id.*

We note at the outset that some facts critical to the motion to suppress were in dispute based on the differing testimony of the officers and appellant. At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Banda v. State,* 890 S.W.2d 42, 51 (Tex.Crim.App.1994). As the trier of fact, the trial court is free to believe or disbelieve all or any part of any witness's testimony. *Porter v. State,* 969 S.W.2d 60, 64 (Tex.App.-Austin 1998, pet. ref'd). Because the trial court did not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling. *See State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Furthermore, because the trial court's ruling turned on the court's assessment of witness credibility and demeanor, we will review the record applying a deferential, abuse of discretion, standard of review.

### B. Initial Encounter with Appellant

■ In her first issue, appellant contends Officer Todd and Deputy Raider lacked reasonable suspicion to justify any investigative detention past the point of checking her identification and flight ticket. The State contends that the officers did not detain appellant, but even if they did, they had reasonable suspicion to do so.

■ In a suppression hearing, the defendant bears an initial burden of rebutting the presumption that the police conduct was proper. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986). He can do so by showing that the search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to either produce a warrant or prove that the warrantless search or seizure was reasonable. *Id.* at 9–10. However, not every encounter between police and citizens involves a seizure or otherwise implicates the Fourth Amendment. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Hunter v. State,* 955 S.W.2d 102, 104 (Tex.Crim.App.1997). A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen, and a seizure does not occur simply because a police officer approaches an individual and asks a few questions. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382; *Hunter,* 955 S.W.2d at 104. Such encounters are consensual and do not trigger the Fourth Amendment so long as a reasonable person would feel free to disregard the police and go about his business. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382; *Hunter,* 955 S.W.2d at 104. A detention, on the other hand, does implicate constitutional concerns, although it is less of an intrusion on a person's Fourth Amendment right against unreasonable

searches and seizures than an arrest. *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968).

Therefore, even when officers have no basis to suspect an individual, they may generally ask questions of him, ask to examine his identification, and request to search his luggage so long as the police do not convey a message that compliance with their requests is required. *Bostick,* 501 U.S. at 434–35, 111 S.Ct. 2382; *Hunter,* 955 S.W.2d at 104. A seizure occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382 (citing *Terry,* 392 U.S. at 19, n. 16, 88 S.Ct. 1868). In determining whether a seizure has occurred for Fourth Amendment purposes, a court must consider the totality of the circumstances surrounding the encounter. *Bostick,* 501 U.S. at 439, 111 S.Ct 2382; *Hunter,* 955 S.W.2d at 104. The dispositive question is whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Bostick,* 501 U.S. at 439, 111 S.Ct. 2382; *Hunter,* 955 S.W.2d at 104; *State v. Velasquez,* 994 S.W.2d 676, 679 (Tex.Crim.App. 1999).

With these guidelines in mind, we must first determine whether a detention occurred. The facts of this case are remarkably similar to the facts in *Hunter,* 955 S.W.2d 102. In that case, two police officers who were monitoring a bus station for drug traffickers approached the defendant as he waited to board a bus. One officer asked the defendant for permission to speak with him and identified himself as a police officer. He questioned the defendant while the other officer stood several feet back, but within hearing range. The officer asked the defendant where he was traveling and then asked if he could see the defendant's bus ticket. The defendant proffered his ticket. The officer returned the ticket to the defendant and then asked to see his identification. The defendant had none. The officer asked if the defendant was carrying any narcotics. The defendant replied that he was not. The officer then told the defendant that he was a narcotics officer conducting a narcotics interview. He asked the defendant if he could look inside his bag, but also informed the defendant that he "did not have to let me." The defendant nevertheless agreed to the search of his bag. The officer discovered a substance in the bag, which later proved to be cocaine.

The facts in *Hunter* leading to the court's conclusion that there was no detention are identical to the facts in this case including: (1) the officers were dressed in plain clothes; (2) their weapons remained concealed throughout the encounter; (3) to the extent that two officers are more intimidating than one, only one officer actually engaged the defendant while the second stood several feet back; (4) the officer did not retain the defendant's ticket, but gave it back to him; (5) the officer did not affirmatively state a belief that the defendant was carrying drugs; (6) the officer specifically told the defendant he did not have to allow the officer to look in his bag; and (7) the officer did not suggest that he would get a search warrant if the defendant did not allow him to look in the bag. *See Hunter,* 955 S.W.2d at 104. Under these facts, there was nothing to convey a message that the defendant was required to comply with the officer's requests, and a reasonable person would have felt free to walk away from the encounter at any time prior to the search of the bag. *Id.*

Similarly, we conclude that Officer Todd's and Deputy Raider's conduct toward appellant would communicate to a

reasonable person that the person was free to decline the officers' requests or otherwise terminate the encounter. *See Bostick,* 501 U.S. at 435, 111 S.Ct. 2382; *Hunter* at 104; *Velasquez* at 679. In addition to the facts previously outlined, the following facts also support our conclusion: (1) the encounter occurred in an open area; (2) the officers did not threaten appellant either overtly or through their tone of voice; and (3) they did not touch appellant although appellant touched Officer Todd as she attempted to distance herself from her bag.[1] Appellant contends that the officers failed to relay to her that she could refuse to talk and terminate the encounter. However, appellant cites no authority holding that fact as dispositive. To the contrary, the fact that Officer Todd asked if she could speak with appellant, as opposed to demanding that appellant speak with her, would demonstrate to a reasonable person that she could refuse to talk. Because no detention occurred, appellant did not meet her burden of proving that a seizure occurred. Thus, no Fourth Amendment rights were implicated, and we need not reach the issue of whether the officers had reasonable suspicion to question appellant. *See Bostick,* 501 U.S. at 434, 111 S.Ct 2382; *Hunter,* 955 S.W.2d at 104.

Accordingly, appellant's first issue is overruled.

## C. Consent to Search

 In her second issue, appellant contends that the State failed to prove by clear and convincing evidence that the consent to search her bag was freely and voluntarily given. Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex. Crim.App.2000); *State v. Ibarra,* 953 S.W.2d 242, 243 (Tex.Crim.App.1997). The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Ohio v. Robinette,* 519 U.S. 33, 40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996) (quoting *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. 2041); *Carmouche,* 10 S.W.3d at 331. In order to be valid, the consent must be shown to be positive and unequivocal and not coerced, by implicit or explicit means, by implied threat or covert force. *Schneckloth,* 412 U.S. at 228; *Carmouche,* 10 S.W.3d at 331. Although the federal constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given. *Carmouche,* 10 S.W.3d at 331; *Ibarra,* 953 S.W.2d at 245. If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding. *Carmouche,* 10 S.W.3d at 331; *see also Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681, 685 (Tex.Crim.App. 1991).

This case amounts to a swearing match over whether consent was given. Because the testimony of the officers would clearly

---

**1.** There was conflicting testimony over several facts relevant to our analysis including the tone of Officer Todd's voice, whether she threatened to handcuff appellant and where Deputy Raider stood during the questioning. Because the officers' testimony clearly establishes that no detention occurred, and because the trial court could choose to disbelieve any part or all of appellant's testimony, the record supports the trial court's conclusion that there was no detention.

establish that appellant's consent to search was freely and voluntarily given, and because the trial court could choose to disbelieve any part or all of appellant's testimony, the record is sufficient to support the trial court's implicit finding that the search was consensual. The officers clearly asked for consent and told appellant that she did not have to consent. *See Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. 2041 (although not dispositive, subject's knowledge of right to refuse consent is one factor to be taken into account when considering voluntariness). According to the officers, appellant said, "go ahead." [2] Under these facts, the consent was positive and unequivocal. Appellant's contention that even if she gave verbal consent as claimed by the officers, at the point that she did so, she was no longer in a position to discontinue a further intrusion into her personal affairs, and was, in effect, arrested, is without merit. The same facts which demonstrate that there was no detention also demonstrate that appellant was not coerced by implied or explicit threats to comply with the request to search. The officers did not

display weapons, threaten or touch appellant or take her to a secluded area to gain her consent to the search. A reasonable person would not feel that she had no option but to comply. *See Carmouche,* 10 S.W.3d at 333. A reasonable person would still feel free to walk away at the point in the encounter that the search occurred. *See Bostick,* 501 U.S. at 435, 111 S.Ct. 2382; *Hunter* at 104. Therefore, the State proved by clear and convincing evidence that the search was consensual, and the trial court did not err in denying appellant's motion to suppress the fruits of that search.

Accordingly, appellant's second issue is overruled.

The judgment of the trial court is affirmed.

---

**2.** Appellant asserts that the officers did not have her sign a consent form, consent forms are a regimental part of police procedure especially for those working in narcotics at an international airport, and the lack of her signature on a consent form is a factor to be considered in determining whether the State

met its burden of proof. However, appellant does not cite to any part of the record where the regularity of consent forms was established. In fact, we find no such evidence in the record. She also cites no authority for her argument that a consent form is dispositive in the consensual search analysis.