Affirmed and Memorandum Opinion filed February 6, 2007








Affirmed and Memorandum Opinion filed February 6, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01131-CR

____________

 

FRANCISCO JAVIER GUZMAN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
District Court

Harris County, Texas

Trial Court Cause No. 1025049

 



 

M E M O R A N D U M   O P I N I O N

Challenging his conviction for possession with the intent
to deliver at least four hundred grams of cocaine, appellant Francisco Javier
Guzman contends that the trial court erred in denying his motion to suppress
evidence of the cocaine based on an allegedly illegal detention. We affirm. 








I.  Factual and Procedural
Background

On April 27, 2005, three Houston Police officers waited at
the El Expresso Bus Station for buses arriving from the Rio Grande Valley, an
area from which illegal narcotics were known to be transported.  Officer Mosley
(a narcotics officer of twenty years), Officer Bender (a narcotics officer of
twelve years and canine handler), and Sergeant Cuevas (a narcotics officer and
canine handler) were experienced law enforcement officers.  All three were
dressed in plain clothes with their weapons concealed.  As they watched the
travelers, they observed, among other things, demeanor, amount of baggage,
points of departure, and final destinations.          

Around 6:00 p.m. that evening, a bus from the Rio Grande
Valley arrived.  Officers Mosley and Bender stood near the door of the bus and
watched the passengers exit.  Appellant caught their attention because, unlike
most travelers coming from that area, he carried an unusually small amount of
luggageCa single gym bag. 
He appeared extremely nervous.   When appellant departed the bus, he
apprehensively scanned the surrounding area.  Watching the immediate vicinity
closely, appellant walked very quickly toward a nearby taxicab.  Officers
Mosley and Bender followed. Officer Mosley approached appellant and  identified
himself by producing his official police identification, along with his badge. 
He asked to speak to appellant.  Appellant agreed.  The other two plain-clothes
clad officers did not participate in this conversation or indicate that they
were in the company of Officer Mosley, but remained in close proximity in case
Officer Mosley needed some assistance. 








Appellant told Officer Mosley that he had just arrived via
the bus from Robstown, a border town just past the checkpoint, and planned to
take the taxi to Adame bus line, another bus company that serves the
Texas-Mexico border, whose terminal is located about two miles from the El
Expresso terminal.  When Officer Mosley asked appellant where he was going,
appellant responded that he was traveling to North Carolina.  When Officer
Mosley asked to see appellant=s identification, appellant produced his
identification and replied that he lived in North Carolina.  Noticing appellant=s shaking hands
and nervous demeanor, Officer Mosley asked appellant if he could search his
person and his bag.  Again, appellant consented. 

In appellant=s bag was a small
amount of clothing, and a large bag of Doritos corn chips.  The Doritos bag 
appeared to be abnormally heavy for its size.  Officer Mosley asked appellant
if there was anything in the bag of chips. Appellant hung his head and did not
respond.  Officer Mosley stuck his hand in the bag and felt what appeared to be
a square object wrapped in plastic.  Appellant, upon being asked, stated that
the object was cocaine.  The officers then placed appellant under arrest and
read him his warnings.  Subsequent field testing revealed that the
contents of the package was indeed cocaine. 

Appellant was charged with the felony offense of possession
with the intent to deliver at least four hundred grams of cocaine.  After a
pretrial hearing in which the trial court denied appellant=s motion to
suppress evidence of the cocaine based on an allegedly illegal detention,
appellant waived his right to a jury trial and entered a plea of guilty to the
charged offense.  Pursuant to an agreed recommendation by the State, the trial
court sentenced appellant to twenty years= confinement, and
a $1,000 fine. 

II.  Issue and analysis








In a single issue, appellant contends that the trial court
erred in denying his motion to suppress evidence because his consent to search
was tainted by an illegal detention.  We review the trial court=s ruling on a
motion to suppress under an abuse‑of‑discretion standard.  Long
v. State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991).  If supported by the
record, a trial court=s ruling on a motion to suppress will not
be overturned.   Brooks v. State, 76 S.W.3d 426, 430 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  At a suppression hearing, the trial court is the sole
finder of fact and is free to believe or disbelieve any or all of the evidence
presented.  Id.  We give almost total deference to the trial court=s determination of
historical facts that depend on credibility and demeanor, but review de novo
the trial court=s application of the law to the facts if
resolution of those ultimate questions does not turn on the evaluation of
credibility and demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).

Did the trial
court err in denying appellant=s motion to
suppress evidence because of an illegal detention?   

Appellant contends that the verbal exchange with Officer
Mosley prior to the time appellant gave his consent to search the gym bag
amounted to a detention without reasonable suspicion in violation of the Fourth
and Fourteenth Amendments to the United States Constitution, and article I,
section 9 of the Texas Constitution.  Therefore, appellant argues, the
subsequent search and discovery of the cocaine were Afruits of the
poisonous tree@ and inadmissible evidence.  We find no merit in
appellant=s argument. 

 In a suppression hearing, the defendant bears an initial
burden of rebutting the presumption that the police conduct was proper.  Russell
v. State, 717 S.W.2d 7, 9 (Tex. Crim.. App. 1986).  He can do so by showing
that the search or seizure occurred without a warrant.  Id.  The burden
then shifts to the State to either produce a warrant or prove that the
warrantless search or seizure was reasonable.  Id. at 9‑10.   








Not all encounters between police and citizens invoke the
protection of the Fourth Amendment.  Terry v. Ohio, 392 U.S. 1, 88 S.Ct.
1868, 20 L.Ed.2d 889 (1968).  Police are as free as anyone else to ask
questions of their fellow citizens.  Hunter v. State, 955 S.W.2d 102,
104 (Tex. Crim. App.  1997).  Interactions between police and civilians are
divided into three categories: (1) encounters, (2) investigative detentions,
and (3) arrests.  See State v. Larue, 28 S.W.3d 549, 553 n. 8 (Tex.
Crim. App.  2000).  An officer may stop a suspicious individual briefly Ato determine
his/her identity or to maintain the status quo while obtaining further
information.@  Comer v. State, 754 S.W.2d 656, 657 (Tex.
Crim. App. 1988) (citing Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921,
32 L.Ed.2d 612 (1972)).  Such encounters are consensual A[s]o long as a
reasonable person would feel free >to disregard the
police and go about his business.=@  Florida v.
Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); Hunter,
955 S.W.2d at 104.  Therefore, even when officers have no basis to suspect
an individual, they may generally ask questions of him, ask to examine his
identification, and request to search his luggage so long as the police do not
convey a message that compliance with their requests is required.  Bostick,
501 U.S. at 434B35, 111 S.Ct. 2382; Hunter, 955
S.W.2d at 104.  A seizure occurs only when the officer, by means of physical
force or show of authority, has in some way restrained the liberty of a
citizen. Bostick, 501 U.S. at 434, 111 S.Ct. 2382 (citing Terry, 392
U.S. at 19, n. 16, 88 S.Ct. 1868).         The test is whether Ain view of all the
circumstances surrounding the incident, a reasonable person would have believed
he was not free to leave.@  Michigan v. Chesternut, 486 U.S.
567, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988); United States v.
Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497
(1980);  Bostick, 501 U.S. at 439, 111 S.Ct 2382; Hunter, 955
S.W.2d at 104.  The dispositive question is whether the police conduct would
have communicated to a reasonable person that the person was not free to
decline the officers= requests or otherwise terminate the encounter.
 Bostick, 501 U.S. at 439, 111 S.Ct. 2382; Hunter, 955 S.W.2d at
104; State v. Velasquez, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).








We first determine whether a detention occurred.  The Court
of Criminal Appeals opinion in the Hunter case provides guidance in
making this determination.  See Hunter, 955 S.W.2d at 102.  In that
case, two police officers who were monitoring a bus station for narcotics
traffickers approached the defendant as he waited to board a bus.  Id.  at
103.  One officer asked the defendant for permission to speak with him and
identified himself as a police officer.  Id.    He questioned the
defendant while the other officer stood several feet back, but within hearing
range.   Id.  The officer asked the defendant where he was traveling and
then asked if he could see the defendant=s bus ticket.  Id.
 The defendant produced his ticket.  Id.  The officer returned the
ticket to the defendant and then asked to see his identification.  Id.  The
defendant had none.  Id.  The officer asked if the defendant was
carrying any narcotics and the defendant replied that he was not.  Id.  The
officer then told the defendant that he was a narcotics officer conducting a
narcotics interview.  Id.  He asked the defendant if he could look
inside his bag, but also informed the defendant that he did not have to
consent.  Id.  The defendant nevertheless agreed to the search of his
bag.  Id.  The officer discovered a substance in the bag, which later
proved to be cocaine.  Id.  The Court of Criminal Appeals concluded
that, under these facts, there was nothing to convey a message that the
defendant was required to comply with the officer=s requests, and a
reasonable person would have felt free to walk away from the encounter at any
time prior to the search of the bag.  Id.; see also Jackson v. State,
77 S.W.3d 921, 928B29 (Tex. App.CHouston [14th
Dist.] 2002, no pet.) (concluding that defendant=s encounter with
airport police was consensual and not detention, and thus, encounter did not
rise to level of Aseizure@ implicating
Fourth Amendment rights; encounter occurred in open area, defendant agreed to
speak with officers, officers were dressed in plain clothes and did not display
any weapons, and officers never touched or restrained defendant during
encounter through use of overt force or through tone of voice).








Similarly, we conclude that Officer Mosley=s conduct toward
appellant would communicate to a reasonable person that the person was free to
decline the requests or otherwise terminate the encounter.  See Bostick,
501 U.S. at 435, 111 S.Ct. 2382 (concluding that no seizure occurs when police
request consent to search his or her luggage so long as the officers do not
convey a message that compliance with their requests is required).  The events
took place in an open, public place; the officers were dressed in plain
clothes; and their weapons remained concealed throughout the encounter. To the
extent that three officers are more intimidating than one, only one officer
actually engaged appellant while the others stood back, ready to offer
assistance only if necessary. Officer Mosley did not retain appellant=s identification
but gave it back to him.  Officer Mosley did not affirmatively state a belief
that appellant was carrying narcotics and although Officer Mosley did not
specifically tell appellant that he did not have to give consent to search,
Officer Mosley never conveyed a message that compliance with his requests was
required.  None of the officers suggested that they would obtain a search
warrant or bring in a narcotics-detecting dog, if appellant refused consent. 
Officer Mosley did not threaten appellant either overtly or through his tone of
voice; and Officer Mosley did not touch appellant to make him consent to
search, but only requested permission to search.  Based on these facts, the
trial court could have concluded that Officer Mosley=s conduct toward
appellant would communicate to a reasonable person that the person was free to
decline the requests or otherwise terminate the encounter.  See id.; see
also Mitchell v. State, 831 S.W.3d 829, 833 (Tex. App.CHouston [1st
Dist.] 1992, pet. ref=d) (concluding detention occurs when an
officer threatens to use a narcotics dog).  Thus, there was no detention. 








Because no detention occurred, appellant did not meet his
burden of proving that a seizure occurred and no Fourth Amendment rights were
implicated.  Therefore, we need not reach the issue of whether the officers had
reasonable suspicion to question appellant.  See Bostick, 501 U.S. at
434, 111 S.Ct 2382; Hunter, 955 S.W.2d at 104; see also Wagner v.
State, Nos. 05-02-01323-CR, 05-02-01324-CR, 2003 WL 1735225, at *2B3 (Tex. App.CDallas April 2,
2003, pet. ref=d) (not designated for publication) (finding encounter
between officer and defendant was not a detention and did not implicate the
Fourth Amendment when, among other things, defendant voluntarily pulled into
the parking lot and voluntarily exited his vehicle, and when officer approached
defendant, did not give any commands, but simply engaged defendant in Asmall talk,@ and when officer
asked defendant for consent to search his vehicle, officer used no force or
coercion, did not threaten defendant, nor drew his weapon); Beverly v.
State, No. 01-02-00259-CR, 2002 WL 31941509, at *3 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (not designated for publication) (concluding that driver
voluntarily consented to search of his vehicle after traffic stop in response
to erratic driving even though police officer requested consent allegedly after
the investigation dispelled the suspicion of an intoxicated driver).[1] 
The trial court did not abuse its discretion in denying appellant=s motion to
suppress the evidence.  

We overrule the appellant=s sole issue on
appeal, and we affirm the trial court=s judgment.      

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 6, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 









[1]  There was conflicting testimony over some of the
facts relevant to our analysis, including: (1) whether Sergeant Cuevas was
standing away from the taxicab in order to allow appellant the opportunity to
walk away if he chose, or physically in between appellant and the door of the
taxicab; and (2) whether appellant=s
gym bag was near appellant=s feet or
already on the seat in the taxicab.   Appellant did not proffer any evidence at
the suppression hearing in regard to these issues.  It is the trial court=s function to evaluate and determine the weight of the
testimony at the motion-to-suppress hearing.   See State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000).  Because the officers= testimony clearly establishes that no detention
occurred, and because the trial court could have chosen to disbelieve all or
any part of the evidence presented, the record supports the trial court=s conclusion that there was no detention.  See id.