In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00062-CV


______________________________




FRIEDA FISKE, Appellant



V.



CITY OF DALLAS, Appellee




 


On Appeal from the 162nd Judicial District Court


Dallas County, Texas


Trial Court No. 04-08456-1




 



Before Carter, Moseley and Cornelius,* JJ.


Opinion by Justice Cornelius



________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 This is an action by Frieda Fiske, a former Dallas municipal judge, against the City of Dallas
seeking reinstatement to her position as a city judge. (1) She alleged that the actions of the City's
Judicial Nominating Commission, which failed to recommend her for appointment to a new term,
were void because the commission violated provisions of the Texas Open Meetings Act (TOMA). 
The City filed a motion for summary judgment, which the trial court granted on all but one of the
grounds raised in the motion.

 Fiske had served as a Dallas municipal judge for approximately thirteen years, either in a
full-time or a part-time capacity. On May 30, 2004, the Dallas City Council declared all municipal
judge positions vacant. The city council had a citizens advisory commission (the JNC), which
recommended to the city council persons for nomination to the vacant judge positions. The JNC
met, received applications, and interviewed persons interested in receiving appointments to the
vacant positions. The JNC reported to the city council those persons it recommended be appointed
to fill the vacant positions. Fiske had applied for reappointment, but was not one of the persons the
JNC recommended. The city council approved the JNC's recommendations and filled all vacant
positions with the persons recommended. All of those judges have since served the full term to
which they were appointed.

 Fiske contends that the actions of the JNC, and ultimately the action of the city council in
failing to reappoint her are void or voidable at best because the JNC violated the TOMA by
(1) failing to give proper specific notice of the meetings at which it considered its recommendations,
and (2) failing to make and preserve written minutes or tape recordings of the proceedings at such
meetings as required by the Texas Open Meetings Act (TOMA).

 The City contended in its motion for summary judgment, and contends here, that (1) the JNC
did not fail to give adequate specific notice of its meetings or fail to prepare and preserve written
minutes or tape recordings of its meetings; (2) the JNC is not a governmental body within the
meaning of the TOMA and therefore is not subject to that Act, and (3) the city council took action
to fill the vacant positions within ninety-one days after Fiske's term expired, so Fiske did not become
a holdover judge entitled to serve an additional term, and because the term to which Fiske seeks
reinstatement has expired, this case is moot.

 According to our summary judgment practice, a defendant moving for summary judgment
is entitled to judgment if the undisputed summary judgment evidence establishes that one or more
of the essential elements of the plaintiff's causes of action are conclusively disproved. Friendswood
Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996); Doe v. Boys Clubs of Greater Dallas,
Inc., 907 S.W.2d 472, 477 (Tex. 1995). The City filed a "no evidence" motion for summary
judgment, and by amendment, also a "traditional" motion for summary judgment. See Tex. R. Civ.
P. 166a(c), (i).

 After reviewing the summary judgment evidence, we conclude that the trial court properly
granted summary judgment for the City on at least two of the grounds raised in the City's motion.

I. Mootness

 We are powerless to grant any relief in this matter that would afford any benefit to Fiske. 
The two-year term to which the JNC's recommended candidates were appointed has expired. The
City has now appointed new judges for all positions, and the term of office to which Fiske seeks
reinstatement has expired. Therefore, there is no declaration or judgment we could make that could
have the effect of restoring to Fiske what she lost allegedly because of the JNC's improper actions. 
Fiske did not seek damages in her suit. A declaratory judgment is proper only if it will have a
tangible effect on a litigant's rights, status, or legal relations; it is not appropriate if no person has an
interest that can be affected by the declaration sought. Nat'l Collegiate Athletic Ass'n v. Jones,
1 S.W.3d 86 (Tex. 1990); Tex. Dep't of Pub. Safety v. LaFleur, 32 S.W.3d 911 (Tex.
App.--Texarkana 2000, no pet.).

 There are two recognized exceptions to the mootness doctrine, but neither of them can avail
Fiske here. The "capable of repetition, yet evading review" exception does not apply because Fiske
was not prevented from seeking immediate review of the City's actions. See Cornyn v. City of
Garland, 994 S.W.2d 258, 266 (Tex. App.--Austin 1999, no pet.). The "public interest" exception
is not applicable because it requires that the controversy involve a question of considerable public
importance. There is no summary judgment evidence that the status of Fiske as a result of alleged
violations of the TOMA by a judicial nominating commission is a question of considerable public
importance.

 Additionally on the mootness issue, Fiske contends she was a holdover judge under
Section 29.005 of the Texas Government Code and would have been entitled to holdover for a new
term if the city council did not act on new appointments within ninety-one days from the date the
vacancies arose. See Tex. Gov't Code Ann. § 29.005 (Vernon 2004). The applicable statute
provides:

 The judge of a municipal court serves for a term of office of two years unless
the municipality provides for a longer term pursuant to Article XI, Section 11, of the
Texas Constitution. A municipal court judge who is not reappointed by the 91st day
following the expiration of a term of office shall, absent action by the appointing
authority, continue to serve for another term of office beginning on the date the
previous term expired.

Id. This point is certainly moot. Fiske judicially admitted that her term expired on May 30, 2004. 
She also admitted, and the summary judgment evidence shows, that the city council took action on
August 25, 2004, to appoint new judges recommended by the JNC to all positions. Thus, the city
council took action to appoint the new judges within ninety-one days of the time the preceding terms
expired. Fiske, therefore, was not a holdover judge under Section 29.005 of the Texas Government
Code and could not be entitled to serve another term. See City of Robstown v. Verastegui, 995
S.W.2d 315 (Tex. App.--Corpus Christi 1999, no pet.).

II. The JNC's Status as a Governmental Body

 The trial court's summary judgment in this case was also proper because the conclusive
summary judgment evidence shows that the Dallas JNC was not a governmental body subject to the
TOMA. The Texas Open Meetings Act provides, among other things, that it applies to a
"Governmental Body." The Act defines "Governmental Body" as "a deliberative body that has
rulemaking or quasi-judicial power and that is classified as a department, agency, or political
subdivision of a county or municipality." Tex. Gov't Code Ann. § 551.001(3)(D) (Vernon 2004).

 The JNC is a citizens advisory group set up to advise the city council as to persons qualified
and suited to serve as municipal judges. It is not a part of the city council; it is not a committee of
the city council; its members are not members of the city council; it has sixteen members, all but one
of whom are private citizens, each appointed by a single city council member in his private capacity;
the remaining member is the currently serving city attorney of Dallas. The JNC members are not
appointed by the city council or by the mayor. The JNC has no decision making authority, but can
only recommend candidates for judgeships to the city council.

 The summary judgment evidence conclusively shows that the JNC is not a governmental
body within the meaning and coverage of the TOMA because (1) it has no rulemaking power; (2) it
has no quasi-judicial power; (3) the JNC was not classified as a department, agency, or political
subdivision of a county or municipality. 

 Quasi-judicial power is defined in the cases as including (a) the power to exercise judgment
and discretion, (b) the power to hear and determine or to ascertain facts and decide, (c) the power
to make binding orders, (d) the power to affect personal or property rights of private persons, (e) the
power to examine witnesses, compel the attendance of witnesses, and hear the litigation of issues,
and (f) the power to enforce decisions or impose penalties. Parker v. Holbrook, 647 S.W.2d 692,
695 (Tex. App.--Houston [1st Dist.] 1982, writ ref'd n.r.e.). The JNC has the power to exercise
judgment and discretion only in a limited advisory role in making recommendations. It has none of
the other functions amounting to quasi-judicial power.

 By the clear terms of the statute, the JNC was not a governmental body within the meaning
of the TOMA. See City of Austin v. Evans, 794 S.W.2d 78 (Tex. App.--Austin 1990, writ denied);
Op. Tex. Att'y Gen. No. H-467 (1974). Fiske relies on the cases of Finlan v. City of Dallas, 888
F.Supp. 779 (N.D. Tex. 1995), and Willman v. City of San Antonio, 123 S.W.3d 469 (Tex.
App.--San Antonio 2003, pet. denied), for her contention that the JNC is covered by the TOMA,
but both of these cases are easily and clearly distinguishable from this case. For example, in Finlan,
the sports development committee involved there was a committee of the city council, and its
members were appointed by the mayor. And in Willman, the committee involved was a city council
committee whose members were appointed by the city council.

 Fiske also contends that because the Dallas City Charter requires that "All official meetings
of the City Council and of all City Council committees must be open to the public as provided by
state law" (Dallas, Tex., Charter ch. III, § 8) (emphasis added), the JNC was required to comply with
the TOMA. She cites Shackelford v. City of Abilene, 585 S.W.2d 665 (Tex. 1979), but that case does
not support her position. In that case, the court upheld Shackelford's right under the city charter, but
did not rule on his claim under the Open Meetings Act. Moreover, in our case, the JNC was not a
city council committee and therefore was not subject to the charter provision. Additionally, in this
case, Fiske did not sue for relief under the charter provision, only under the TOMA.

 There are additional reasons why the summary judgment rendered by the trial court in this
case must be upheld, but in view of our disposition of the preceding points, it is unnecessary to
discuss the others.

 We affirm the judgment of the trial court.

 


 William J. Cornelius

 Justice*


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: March 13, 2007

Date Decided: April 6, 2007

1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.


Exception Locked="false" Priority="67" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 1 Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00160-CR

                                                ______________________________

 

 

                                 RICKY DURYAN HUGHES,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                          On Appeal from the County
Court at Law #1

                                                             Gregg County, Texas

                                                         Trial Court
No. 2010-0507

 

                                                             
                                     

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Ricky
Duryan Hughes appeals his conviction for driving while intoxicated (DWI), enhanced
to a class A misdemeanor by a prior conviction for DWI.  Officer Manfred Gilow, a police officer with
the Longview Police Department, observed Hughes car in a parking lot of Teague
Park legally parked with the headlights on. 
As Gilow approached, the headlights of Hughes vehicle turned off.  Although he had not observed any illegal
conduct and cars were often parked in this parking lot late at night, Gilow
parked his marked police jeep at an angle to Hughes car and turned on the
vehicles bright overhead white lights. 
Officer Gilow then illuminated the front of Hughes vehicle with his
spotlight.  Gilow testified he did not
observe any illegal activity, but testified the Teague Park area has a high
incidence of drug and prostitution activity. 
During the interaction, Gilow developed a suspicion that Hughes was
intoxicated and ultimately arrested Hughes for DWI.  The trial court denied Hughes motion to
suppress, and Hughes, pursuant to a plea bargain, pled nolo contendere and pled
true to the enhancement.  The trial court
sentenced Hughes, consistent with the plea bargain, to one year of confinement,
suspended the sentence, and placed Hughes on fifteen months community
supervision.  Hughes sole issue on
appeal is whether the trial court erred in denying his motion to suppress. 

            A
trial courts decision on a motion to suppress evidence is reviewed by applying
a bifurcated standard of review deferring to the trial courts determination of
historical facts that depend on credibility, but reviewing the trial courts
application of the law de novo.  Burke v. State, 27 S.W.3d 651, 654 (Tex.
App.Waco 2000, pet. refd).  The
appellate court affords almost total deference to a trial courts determination
of the historical facts supported by the record, especially when the trial
courts fact-findings are based on an evaluation of credibility and demeanor.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The court also affords such deference to a
trial courts ruling on application of law to fact questions, also known as mixed
questions of law and fact, if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.  The appellate court, though, reviews de novo
those questions not turning on credibility and demeanor.  Id.  

            The
dispute between the parties in this case concerns a single issuewhether the
initial interaction between Officer Gilow and Hughes was an encounter or an
investigative detention.  Not every
encounter between police and citizens implicates the Fourth Amendment.  Hunter v. State, 955 S.W.2d 102, 104
(Tex. Crim. App. 1997).  There are three
categories of interactions between police officers and citizens:  encounters, investigative detentions, and
arrests.  State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).  

            An
encounter is a purely consensual interaction which a citizen may terminate at
any time.  Saldivar v. State, 209 S.W.3d 275, 281 (Tex. App.Fort Worth 2006,
no pet.).  Police officers do not violate
the Fourth Amendment by merely approaching an individual in public to ask
questions. Such an encounter does not require any justification whatsoever on
the part of an officer.  United States
v. Mendenhall, 446 U.S. 544, 555 (1980); Hunter, 955 S.W.2d at 104.  Encounters
are consensual as long as the
person would feel free to go about his business.  Hunter, 955 S.W.2d at 104; see Florida v. Bostick, 501 U.S. 429, 434 (1991); California
v. Hodari D., 499 U.S. 621 (1991).

            A
temporary or investigative detention is a seizure.  Josey
v. State, 981 S.W.2d 831, 838 (Tex. App.Houston [14th Dist.] 1998, pet.
refd).  An investigative detention
occurs when an individual is encountered by a police officer, yields to the
officers display of authority, and is temporarily detained for purposes of an
investigation.  Johnson v. State,
912 S.W.2d 227, 235 (Tex. Crim. App. 1995). 
A person yields to an officers display of authority when a reasonable
person would not feel free to continue walking or otherwise terminate the
encounter.  Bostick, 501 U.S. at 436;
Hodari D., 499 U.S. at 628; State v.
Velasquez, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).  Because an investigative detention is a
seizure, reasonable suspicion must be shown by the officer to justify the
seizure.  State v. Larue, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000).  

            In
determining whether a seizure of the person has occurred for Fourth Amendment
purposes, a court must consider the totality of the circumstances surrounding
the encounter.  Bostick, 501 U.S. at 439; Hunter,
955 S.W.2d at 104.  The crucial test is
whether, taking into account all of the circumstances surrounding the encounter,
the police conduct would have communicated to a reasonable person he was not at
liberty to ignore the police presence and go about his business.  Bostick, 501 U.S. at 439; State v. Velasquez, 994 S.W.2d
676, 679 (Tex. Crim. App. 1999); Hunter, 955 S.W.2d at 104; Jackson
v. State, 77 S.W.3d 921, 927 (Tex. App.Houston [14th Dist.] 2002, no
pet.).  

            Hughes
argues the initial interaction between Officer Gilow and Hughes was an
investigative detention because Gilow parked in front of Hughes vehicle and
activated his overhead take-down lights.  The State responds that neither of these
actions constitute a sufficient show of authority that a reasonable person
would not feel free to leave.

            The
Texas Court of Criminal Appeals has considered the fact that a police officer boxed
in Appellees parked truck in determining whether a seizure had occurred.  See State
v. Garcia-Cantu, 253 S.W.3d 236, 247 n.44 (Tex. Crim. App. 2008).  This Court has recently held the fact that a
police officer boxed in the appellants vehicle between an entry gate and the
police officers vehicle may suggest a seizure has occurred.  See
Sosa v. State, No. 06-10-00161-CR,
2011 Tex. App. LEXIS 842 (Tex. App.Texarkana Feb. 4, 2011, no pet. h.)
(mem op).  The position of Gilows
vehicle, however, did not prevent Hughes from driving away.  The trial court found, in its findings of
fact,[1]
that Officer Gilow parked his patrol car cater-corner (diagonally).  The position of the officers car did not
block the pickup truck or prevent the pickup from leaving.  Gilow agreed he pulled in front of Hughes
vehicle and kind of angled [the police car] towards him where he was backed
into a space.  We will defer to the
trial courts finding of historical fact that Gilow did not box-in Hughes
with his patrol vehicle.  As such, this Courts
recent opinion in Sosa is clearly
distinguishable.  

            Further,
we are not convinced that Officer Gilows activation of his overhead take-down
lights and use of his spotlight were sufficient to constitute a sufficient show
of authority.          It is important to note that the lights activated by the
police officer in this case were not his overhead emergency lights which flash
red and blue,[2]
but rather the overhead white safety or take-down lights.[3]  We believe this distinction to be extremely
important.  Overhead emergency lights are
synonymous with an instruction to stop. 
The lights in this case, while the evidence established are blinding,
do not carry the same connotations as emergency lights.  While under some circumstances, overhead take-down
lights could be sufficient along with other circumstances to indicate a
sufficient demonstration of authority, we do not believe the facts of this case
demonstrate a sufficient show of authority to constitute an investigative
detention.  The Texas Court of Criminal
Appeals has specifically noted the use of a spotlight, by itself, is not a
circumstance that necessarily converts a consensual encounter into a Fourth
Amendment detention.  Garcia-Cantu, 253 S.W.3d at 245 n.43.  The overhead white safety or take-down
lights at issue in this case are extremely similar to spotlights.  While Officer Gilow testified the lights can
be blinding, it is clear their primary purpose is for illuminationnot as a
signal to stop.  The use of the overhead
white safety or take-down lights along with the use of a spotlight was not a
sufficient show of authority that a reasonable person would conclude he was not
free to leave.  

            Last,
we note Officer Gilow testified Hughes was not detained and could have
terminated the contact at any time. 
Gilow, though, admitted he would have activated his red and blue
emergency lights and pursued Hughes if he had left.[4]  Whether a reasonable person would conclude he
was free to leave is determined by the objective circumstances of the case, not
by the subjective views of either the police officers or the person being
questioned.  Id. at 244 n.41.  An officers subjective intent is relevant
only to the extent such an intent is communicated to the citizen by means of
an authoritative voice, commanding demeanor, or other objective indicia of
official authority.  Id.  The record contains no evidence that Officer
Gilow informed Hughes he would be detained if he attempted to leave.  

            In
this case, we defer to the trial courts finding that Hughes vehicle was not boxed
in by Officer Gilows police car.  The
combined use of the spotlight and the overhead white security or take-down
lights would not have communicated to a reasonable person that he was not at
liberty to terminate the encounter. 
There is no evidence that Gilow otherwise communicated to Hughes that he
was not free to leave.  We believe the
initial interaction between Gilow and Hughes is best classified as an encounter
and Gilow was not required to have reasonable suspicion.  The trial court did not err in denying Hughes
motion to suppress.

            For
the reasons stated, we affirm.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          February
22, 2011

Date Decided:             February
24, 2011

 

Publish 











[1]This
Court has noted the better practice is for the trial court to make findings of
fact when denying a motion to suppress.  Morrow v. State, 139 S.W.3d 736, 741
(Tex. App.Texarkana 2004, no pet.). 
Although the trial court was not required, under the facts of this case,
to make findings of fact, we applaud the trial courts diligence in making such
findings.





[2]The
Texas Court of Criminal Appeals has noted [t]he use of blue flashers or
police emergency lights are frequently held sufficient to constitute a
detention or seizure of a citizen, either in a parked or moving car.  Garcia-Cantu,
253 S.W.3d at 245 n.43 (distinguishing use of spotlight from overhead lights); see Crain v. State, 315 S.W.3d 43, 52
(Tex. Crim. App. 2010) (activation of overhead lights factor in concluding
pedestrian was detained).  But see Franks v. State, 241 S.W.3d 135,
142 (Tex. App.Austin 2007, pet. refd) (activation of overhead emergency
lights to illuminate area, standing alone, not sufficient to constitute
detention of motorist already parked at rest park).  This Court has recently noted that emergency
overhead lights which flash red and blue can be a factor suggesting the
interaction was an investigative detention. 
See Sosa, 2011 Tex. App. LEXIS 842 (finding interaction an
investigative detention when officer activated emergency overhead lights and
boxed in appellants vehicle).

 





[3]In
its findings of fact, the trial court found Officer Gilow turned on his
overhead white safety lights which illuminated the pickup truck and immediate
area.  Gilow described the lights he
activated as just white lights and agreed they were [l]ike a big security
light.  Gilow distinguished them from
his overhead blue and red lights.  We
will defer to the trial courts finding of historical fact in concluding the
lights were white safety lights, also known as take-down lights.





[4]Officer
Gilow testified the fact that Hughes had terminated the encounter would give
him reasonable suspicion to detain him. 
We do not endorse this legal conclusion made by Gilow.