

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARY ISABEL RUIZ, | § | No. 08-19-00181-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court #4 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20160C07963) |
| | § | |

## O P I N I O N

A jury found Mary Isabel Ruiz guilty of driving while intoxicated, and the court assessed punishment at 20 months of community supervision. In one issue on appeal, Ruiz challenges the trial court's denial of her in-trial motion to suppress evidence, contending that she was the subject of a citizen's arrest by security personnel which amounted to a prolonged detention in violation of the federal and state constitutions. We will affirm.

## BACKGROUND

Ruiz was driving towards the Speaking Rock Casino at approximately 2:30 a.m. when she rubbed tires with an oncoming car. Ruiz did not stop out on the road, but continued on to the casino employee parking lot and drove to the guard shack. She was closely followed by the woman with whom she had rubbed tires, who shouted at Ruiz prompting the casino security guards to come

over and separate them. The woman told the security guards that Ruiz had hit her and that they should not let Ruiz leave. Ruiz testified that the security guards told her that "it was not a good idea" to leave and that "we should wait" for the police to arrive. Ruiz and the other driver then waited there for approximately an hour and a half before the police arrived.

The responding police officers testified that they arrived at approximately 4 a.m. Ruiz was sitting in the driver's seat of her vehicle with the engine running, and while the police officers saw security guards in the area, on foot and bicycle, no one appeared to be detaining Ruiz at the scene "in any way, shape, or form." On interacting with Ruiz, one of the police officers noted signs of intoxication, conducted field sobriety tests on her, and arrested her for driving while intoxicated. Ruiz refused a breathalyzer test, and police subsequently obtained a blood sample pursuant to a warrant showing her blood alcohol content to be 0.147.

At trial, Ruiz moved to suppress the admission of any evidence obtained following what she purported to be an impermissibly long detention by the security guards in violation of her Fourth Amendment rights. After hearing the above-described evidence and arguments of counsel, the trial court denied Ruiz's motion to suppress. Following her conviction, Ruiz filed this appeal challenging the trial court's denial of her motion to suppress.

**DISCUSSION**

Appellant contends that the trial court erred in not granting her motion to suppress because the evidence obtained by police was the product of her unreasonably long detention by casino security officers, prior to the arrival of police, in violation of her rights under the Fourth Amendment. As such, this case turns largely on the nature of the time Ruiz spent while awaiting police —was this time spent waiting on police in the casino parking lot consensual, or was Ruiz

held without her consent by security guards acting as law enforcement, giving rise to the protections of the Fourth Amendment?

## Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex.Crim.App. 2013); *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex.Crim.App. 2010). We review the trial court's factual findings for abuse of discretion but review the trial court's application of law to the facts *de novo*. *Turrubiate,* 399 S.W.3d at 150; *Valtierra*, 310 S.W.3d at 447. Where, as here, the trial court does not make explicit findings of fact, we infer the factual findings that support the trial court's ruling if the record supports the implied fact-findings. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008); *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). But the question of whether a given set of historical facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment is an issue of law that we review *de novo*. *Garcia–Cantu*, 253 S.W.3d at 241. We will uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

## Can Security Guards' Actions Trigger the Fourth Amendment?

At the outset, we note that Ruiz's allegations of unreasonable delay regarding the detention turn upon time she spent in the casino parking lot awaiting the arrival of police. Ruiz seems to argue that this time amounted to either an investigative detention or a citizens' arrest by the casino security guards sufficient to invoke and violate her Fourth Amendment rights.

3

Few Texas cases have discussed the types of searches and seizures conducted by private citizens that are illegal for purposes of the Texas exclusionary rule. *Miles v. State*, 241 S.W.3d 28 (Tex.Crim.App. 2007). The Court of Criminal Appeals in *Miles* put forth a principle to explain the holdings consistent with the purpose of the Texas exclusionary rule in Article 38.23—that a private person standing in the shoes of a police officer can do what a police officer in those circumstances can legitimately do, but cannot do what a police officer cannot do. *Id*. at 39; TEX.CODE CRIM.PROC.ANN. art. 38.23(a). Under the exclusionary rule, this means no evidence obtained by an officer or other person in violation of law may be admitted against a defendant on the trial of any criminal case. *Id*. This applies to illegal searches or seizures conducted by law enforcement officers or other persons, even when those other persons are not acting in conjunction with, or at the request of, government officials. *See Miles*, 241 S.W.3d 28, 36; U.S. CONST. AMEND. IV.

*Miles* also makes clear that the statutory authorization for both officers and citizens to arrest for an "offense against the public peace" codifies an "exigent circumstances" exception to the warrant requirement, and relevant to our inquiry here, includes the offense of DWI. *Id*. at 39-40. To the extent Ruiz argues that the security guards stood in the shoes of police to effect her detention or even arrest, our analysis does not turn on laws unique to citizens' arrests or security guard actions. Rather, we view the actions of the security guards through the prism of the holding in *Miles* - that the actions of private citizens, when standing in the shoes of police, must be subjected to the same constitutional scrutiny as actions of the police. As such, to evaluate this case we apply the body of search and seizure law to the facts in the record before us, whether security guard or police, focusing on whether a reasonable person in Ruiz's position would feel free to go about her business under the totality of the circumstances. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991).

**Applicable Law of Search and Seizure**

Not every encounter between a citizen and law enforcement implicates the Fourth Amendment. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex.Crim.App. 1997). There are three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002). An encounter does not rise to the level of a seizure as it is a purely consensual interaction which a citizen may terminate at any time. *Saldivar v. State*, 209 S.W.3d 275, 281 (Tex.App.—Fort Worth 2006, no pet.). Encounters are consensual as long as the reasonable person would feel free to go about his business. *Hunter*, 955 S.W.2d at 104; *see Bostick*, 501 U.S. at 434; *California v. Hodari D.*, 499 U.S. 621 (1991). Temporary or investigative detentions and arrest, in contrast, rise to the level of a seizure and implicate the Fourth Amendment. *Josey v. State*, 981 S.W.2d 831, 838 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd).

In determining whether a seizure of the person has occurred for Fourth Amendment purposes, a court must consider the totality of the circumstances surrounding the encounter. *Bostick,* 501 U.S. at 439; *Hunter*, 955 S.W.2d at 104. The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person she was not at liberty to ignore the police presence and go about her business. *Bostick*, 501 U.S. at 439; *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999); *Hunter*, 955 S.W.2d at 104; *Jackson v. State*, 77 S.W.3d 921, 927 (Tex.App.—Houston [14th Dist.] 2002, no pet.).

**Application of the Law to This Record**

Ruiz maintains that the casino security guards detained her without consent and that a reasonable person under the circumstances would not have believed she was free to leave. The

State argues that Ruiz's encounter with casino security was consensual and thus did not trigger Fourth Amendment protections.

Ruiz supports her contention by noting: (1) that the other driver called out to the casino security guards to not let Ruiz leave; (2) that Ruiz testified as to her belief that she "wasn't able to leave;" (3) that for some unspecified time a security guard stood by Ruiz's car door; (4) that security "made it clear to me that it was not a good idea, that we should wait for the police department;" and (4) that security "told me not to go ahead and leave until the police department got there."

Because the trial court did not issue findings of fact or conclusions of law, we imply the fact-findings necessary to the trial court's judgment that are supported by the evidence. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex.Crim.App. 2006). Based on the record, we cannot conclude that Appellant met her initial burden for establishing that the time spent waiting for police was not a consensual encounter. *See State v. Woodard*, 341 S.W.3d 404, 413 (Tex.Crim.App. 2011).

To the contrary, the record supports an implied finding by the trial court that the interaction was consensual. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court could have determined that a reasonable person in Ruiz's position would have believed that she was free to ignore the security guard's suggestions, and thus, the interaction between Ruiz and casino security was a voluntary encounter rather than a detention or arrest implicating the Fourth Amendment. *See Shepherd v. State*, 273 S.W.3d 681, 684 (Tex.Crim.App. 2008); *Perez*, 85 S.W.3d at 819 (explaining that in an encounter, a police officer may approach an individual in a public place, and request information if he is willing to listen).

With conflicting testimony in the record, we must defer to the trial court's implied findings of historical fact because they turn on an evaluation of the credibility of the witnesses. In denying

Ruiz's motion to suppress, the trial court could have implicitly found that the security guards' behavior was such that a reasonable person in the defendant's position could have felt free to go about her business. *See Bostick*, 501 U.S. at 434. Ruiz and the other driver had drawn the guards' attention to separate them in a scuffle, as opposed to the guards engaging Ruiz to investigate a crime. Although Ruiz testified that she "wasn't able to leave," she also said the security guards told her "that it was not a good idea, that we should wait for the police department" - language arguably more in the nature of suggestions than commands. The police officers arrived later to find Ruiz sitting in her car with the engine running, unattended by security guards - inconsistent with Ruiz's argument that she was being detained by the casino guards. The police testified that they did not speak to the casino guards, take the case over from them, or see the guards detain Ruiz "in any way, shape, or form," further supporting a finding that the guards' role was not one of detaining Ruiz or investigating any crime. There is no evidence in the record that the security guards questioned Ruiz, investigated any crime, or made any effort to block her car from leaving. *See Miles*, 241 S.W.3d 28 (evidence of car being blocked or corralled from leaving supported finding of non-consensual detention). Nor is there evidence that the security guards used a tone of voice or other show of authority that would have tended to make a reasonable person feel they were not free to leave. On this record, giving the trial court's holding almost total deference as we must, we cannot say that the trial court abused its discretion by denying Ruiz's motion to suppress.

The trial court's ruling on the motion to suppress is reasonably supported by this record, and we conclude that the court did not err in denying Ruiz's motion to suppress.

## CERTIFICATION OF RIGHT TO APPEAL

We note that the trial court has certified Appellant's right to appeal in this case, however the defendant's name is typed on the signature line of the receipt notification section of the

7

certification. It is unclear whether this was intended to be an electronic signature from the defendant or not. Because under the circumstances it is unclear whether the defendant received notice of her right to appeal, we order Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of her right to file a *pro se* petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. The Court further ORDERS Appellant's attorney to comply with all the requirements of Rule 48.4.

## CONCLUSION

We overrule Appellant's sole issue on appeal, affirm the trial court's denial of the motion to suppress evidence, and affirm the district court's judgment of conviction.

April 30, 2021

JEFF ROSE, Former Chief Justice, Third Court of Appeals

Before Palafox, J., Alley, J., and Rose, Former C.J.
Rose, Former C.J. (Sitting by Assignment)

(Do Not Publish)