**Reversed and Remanded and Majority and Dissenting Opinions filed September 22, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00838-CR

---

**JEREL CHINEDU IGBOJI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 16-DCR-072102**

---

## M A J O R I T Y   O P I N I O N

A jury found Appellant Jerel Chinedu Igboji guilty of aggravated robbery and assessed punishment at 17 years' confinement. Raising one issue on appeal, Appellant argues the trial court erred by denying his motion to suppress evidence obtained following the warrantless seizure of his cell phone. For the reasons below, we reverse and remand for a new trial.

BACKGROUND

Shortly after closing for the night on December 10, 2015, a Kentucky Fried Chicken in Stafford, Texas was robbed by two armed men. Several employees, including Appellant, were present during the robbery.

Detective Michael Ramirez was assigned to investigate the robbery and interviewed some of the employees the morning after the incident. One of the employees showed Detective Ramirez a Snapchat[1] video posted by Appellant; the video showed several police officers investigating the scene shortly after the robbery occurred.

Several days later, Detective Ramirez called Appellant and asked him to provide a formal statement regarding the incident. Appellant agreed and Detective Ramirez picked Appellant up and drove him to the Stafford police department. During the interview, Detective Ramirez took possession of Appellant's cell phone. Two days later, Detective Ramirez obtained a warrant to search Appellant's phone.

Appellant was arrested approximately one month later and charged with aggravated robbery. *See* Tex. Penal Code Ann. § 29.03. Appellant pleaded not guilty and elected to proceed with a jury trial. Before trial, Appellant filed a motion to suppress and argued that Detective Ramirez's warrantless seizure of his cell phone violated the Fourth Amendment. Appellant requested that the trial court suppress all evidence obtained from his phone. The trial court held a hearing on Appellant's motion to suppress and, after hearing evidence and the arguments of

---

[1] Snapchat is a messaging application that allows users to share pictures, videos, and messages that are only available for a short time before they become inaccessible. "Snaps" can be directed privately to selected contacts or to a semi-public "story". *See* Snapchat, Wikipedia, https://en.wikipedia.org/wiki/Snapchat (last visited August 11, 2020).

counsel, verbally denied Appellant's motion.

Appellant proceeded to trial and the jury found him guilty of aggravated robbery. Appellant timely appealed.

## ANALYSIS

Challenging the trial court's denial of his motion to suppress, Appellant asserts that his cell phone (1) was seized without a warrant, and (2) was searched without a warrant.

We begin by addressing error preservation with respect to Appellant's second contention regarding the search of his phone. To preserve an issue for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* Tex. R. App. P. 33.1(a). The complaint asserted on appeal must comport with the complaint raised in the trial court. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Pabst v. State*, 466 S.W.3d 902, 907 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Even constitutional claims may be waived by the failure to timely complain in the trial court. *Pabst*, 466 S.W.3d at 907 (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)).

Here, Appellant's motion to suppress was entitled "Motion to Suppress Warrantless Seizure" and argued that the seizure of Appellant's cell phone violated the Fourth Amendment. Appellant's motion did not allege that Detective Ramirez searched his phone without a warrant. Likewise, at the hearing on Appellant's motion, Appellant's attorney argued only that the seizure was improper – he did not address the propriety of the subsequent search or assert that it was undertaken without a warrant. Because Appellant did not raise in the trial court his complaint regarding the alleged warrantless search of his cell phone, this issue is not

3

preserved for appellate review. *See* Tex. R. App. P. 33.1(a); *see, e.g., Pabst*, 466 S.W.3d at 907-08 (defendant did not preserve issue for appellate review because it was not raised in the trial court).

Moreover, the record does not contain any evidence suggesting that Appellant's phone was searched without a warrant. Testifying at the hearing on Appellant's motion to suppress, Detective Ramirez stated that Appellant's phone was searched only after a warrant was obtained. The search warrant for Appellant's phone also was admitted into evidence at the hearing – the warrant was dated December 16, 2015, two days after Appellant's meeting with Detective Ramirez. In sum, no evidence supports Appellant's contention that his phone was searched without a warrant.

We proceed to analyze the trial court's denial of Appellant's motion to dismiss with respect to the warrantless seizure of Appellant's phone.

## I.     Standard of Review and Governing Law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013); *Thomas v. State*, 586 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *Thomas*, 586 S.W.3d at 419. We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor. *Wiede*, 214 S.W.3d at 24; *Thomas*, 586 S.W.3d at 420. We view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *Gutierrez v. State*, 585 S.W.3d 599, 608 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

4

We review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Wade*, 422 SW.3d at 667; *Gutierrez*, 585 S.W.3d at 608. Where, as here, there are no written findings of fact, we uphold the ruling on any theory of law applicable to the case and presume the trial court made implicit findings of fact in support of its ruling so long as those facts are supported by the record. *Thomas*, 586 S.W.3d 419-20.

Texas Code of Criminal Procedure article 38.23(a) provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State or Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code. Crim. Proc. Ann. art. 38.23(a). Here, Appellant contends that his Fourth Amendment rights were violated when Detective Ramirez seized his cell phone without a warrant.

The Fourth Amendment prohibits unreasonable searches and seizures. *See* U.S. Const. amend. IV; *see also State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2014). Generally, the seizure of an individual's personal property is per se unreasonable within the meaning of the Fourth Amendment unless the seizure is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized. *United States v. Place*, 462 U.S. 696, 701 (1983); *see also Kothe v. State*, 152 S.W.3d 54, 59 n.10 (Tex. Crim. App. 2004) ("warrantless searches and seizures are presumed to be unreasonable"). But there are exceptions to the warrant requirement. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013); *Villarreal*, 475 S.W.3d at 796. Voluntary consent to search is an established exception. *Villarreal*, 475 S.W.3d at 796 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). A second "well-recognized exception" applies when "the exigencies of the situation make the needs of law enforcement

5

so compelling that a warrantless search or seizure is objectively reasonable under the Fourth Amendment." *Gutierrez*, 585 S.W.3d at 608 (citing *McNeely*, 569 U.S. at 148-49).

When a defendant establishes that a search or seizure was conducted without a warrant, the burden shifts to the State to prove that the search or seizure was reasonable. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Gutierrez*, 585 S.W.3d at 609.

## II.      Evidence

Detective Ramirez was the first witness to testify at the hearing on Appellant's motion to suppress. Detective Ramirez said that, during his interview with the Kentucky Fried Chicken employees the day after the robbery, one of the employees showed him a Snapchat video that showed police officers investigating the robbery. Detective Ramirez recognized the officers in the video and believed the video was taken shortly after the robbery occurred. Detective Ramirez learned that the video was posted by Appellant's Snapchat account. According to Detective Ramirez, the other restaurant employees "seemed suspicious" of Appellant.

Detective Ramirez said that, at the time of this investigation, he did not have a lot of knowledge regarding Snapchat but knew its shared contents were "deleted after a certain amount of time." Detective Ramirez believed "the user was able to predetermine that time on how long the image or video lasts." Detective Ramirez also stated that the Snapchat user "can actually keep the image or the video just like you would on any other app[lication], without having it expire within a certain amount of time."

Detective Ramirez testified that he contacted Appellant on December 14,

6

2015, seeking to secure "a copy of the videos and any other evidence." Appellant agreed to meet with Detective Ramirez and Detective Ramirez picked him up and drove him to the Stafford police department. Detective Ramirez said that, at this point in the investigation, he believed Appellant was a witness and noted that Appellant had been cooperative during the investigation. According to Detective Ramirez, he did not have any reason to believe that Appellant would not share the videos with him.

Detective Ramirez said that, during the meeting, he suggested to Appellant that Appellant give him consent to search his phone and obtain the videos. According to Detective Ramirez, Appellant did not consent to the search so he "seized" Appellant's phone "to preserve whatever was on the device." Detective Ramirez subsequently obtained a warrant to search Appellant's phone. When asked why he did not get the search warrant before meeting with Appellant, Detective Ramirez stated that he was hoping Appellant "would just consent and it wouldn't have been a big deal."

The second witness to testify at the motion hearing was Bruce Motes, a certified forensic computer examiner. Motes described Snapchat as "a social media platform to share images that were meant to be instantly deleted." Describing the application's functions, Motes said that a person who sends content over Snapchat also can retain that content on his phone. Motes said that, if the transmitted content was deleted from the phone, there was still a possibility of it being recovered but it was dependent on each phone's "file system function".

Also admitted into evidence during the hearing was (1) Detective Ramirez's affidavit for the search warrant; (2) the warrant dated December 16, 2015, and (3) an audio recording of the meeting during which Detective Ramirez obtained Appellant's phone. Ramirez's affidavit provides the following description of the

relevant facts:

> Upon arrival [at the Kentucky Fried Chicken] reporting officers interviewed a number of the restaurant's employees and learned that two masked men entered the business through the back door and displayed handguns and ordered the manager to open the business' safe.
>
> The back door through which entry was made was left unsecured by [Appellant], an employee. [Appellant] stated he was taking the trash out of the business at the close of the day. [Appellant] stated he was told by the manager on duty, Tammie Ball, to take the trash out. Ball stated that it was against company policy to leave the back door unsecured. This was supported by a large sign that clearly states, "DANGER, NEVER open this door after dark . . . ."
>
> Tammie Ball described [Appellant] as "lazy, never wanting to work" and denied giving [Appellant] the directive to take the trash out.
>
> *  *  *
>
> [At the police department,] I explain[ed] to [Appellant] that I felt he may be in possession of digital evidence in his phone and asked for consent to search the phone. [Appellant] stated he did not have anything to hide but refused to provide me with consent to search the phone.
>
> I explained to [Appellant] that I had no other option but to seize his cell phone as I believe[d] it may contain digital evidence that will be helpful in this investigation and I did not want to risk having him delete the data. [Appellant] complied and handed me the phone for which I am seeking this search warrant.

In the audio recording of Appellant's December 14, 2015 meeting with Detective Ramirez, Appellant recounts what occurred at the restaurant the night of the robbery. Appellant says he was instructed to take the trash out after doing the dishes and, when he was making his second trip out the back door to the dumpster, two masked men with guns entered the restaurant. Appellant says the masked men put the employees (including Appellant) in the freezer; the employees remained in the freezer until the police officers arrived.

8

Detective Ramirez then brings up the Snapchat videos he saw on the other employee's phone and asks Appellant if he can have his copies of the videos. Appellant says he does not have the videos and explains how Snapchat's content deletes itself. Appellant tells Detective Ramirez he is "100% sure" there is nothing else on his phone.

Detective Ramirez continues discussing the incident with Appellant and tells Appellant some of the restaurant's managers said Appellant "volunteered" to take the trash out that evening. According to Ramirez, the managers said they did not tell Appellant to take the trash out and also said it was against the restaurant's policy to open the back door at night. Ramirez also points out to Appellant that there was a sign on the restaurant's back door that says it is not to be opened after dark. In response, Appellant continues to insist that he was instructed to take the trash out.

Detective Ramirez again asks for Appellant's phone and says Appellant has two options: to "volunteer and give [Ramirez] consent [to] search the phone" or Ramirez "would have to seize the phone" and get a search warrant. Detective Ramirez explains to Appellant that, if he seized the phone, he could not tell Appellant when he would be able to get the phone back. But if Appellant consented to the search, Detective Ramirez says that he would be able to get his phone back much faster. Appellant tells Detective Ramirez to "get a search warrant". Detective Ramirez tells Appellant he is going to "seize" Appellant's phone and states, "I'm going to take it right now until I get a search warrant." Afterwards, the meeting ends and Detective Ramirez drives Appellant back to the location from where he picked him up.

## III.     Analysis of Error

Our analysis begins by examining whether the evidence shows that

9

Detective Ramirez seized Appellant's phone without a warrant. *See Place*, 462 U.S. at 701; *Kothe*, 152 S.W.3d at 59 n.10. We conclude that it does.

At the motion hearing, Detective Ramirez testified that Appellant did not consent to the search so he "seized" Appellant's phone "to preserve whatever was on the device."[2] In his affidavit for the subsequent search warrant, Detective Ramirez similarly stated that Appellant "refused to provide [Ramirez] with consent to search the phone" so the phone was "seize[d]". And, in the audio recording of Detective Ramirez's meeting with Appellant, Ramirez explains to Appellant that Appellant could either consent to the search of the phone or Ramirez would seize the phone while awaiting a search warrant. Appellant would not consent and effectively chose to have Detective Ramirez seize the phone. In sum, the record clearly shows that Appellant's phone was seized without a warrant. Therefore, the burden shifted to the State to prove that the seizure was reasonable. *See Ford*, 158 S.W.3d at 492; *Gutierrez*, 585 S.W.3d at 609.

In its appellate brief, the State asserts that Detective Ramirez's seizure of Appellant's phone falls within two exceptions to the warrant requirement: (1) the voluntary consent exception, and (2) the exigent-circumstances exception. We

---

[2] Which foreseeably included (*inter alia*) photos, search and browsing histories, location data, and personalized "apps". *Riley v. California,* 573 U.S. 373, 395 (2014) ("The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet."). *See also id.* at 396 (quoting *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring) ("GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations.")) and *id.* ("There are over a million apps available in each of the two major app stores; the phrase 'there's an app for that' is now part of the popular lexicon. The average smart phone user has installed 33 apps, which together can form a revealing montage of the user's life.") (citing Brief for Electronic Privacy Information Center as Amicus Curiae in No. 13-132, p. 9).

analyze these exceptions below.

### A. Voluntary Consent

As an exception to the warrant requirement, consent is valid when voluntarily given. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). The validity of a consensual search is a question of fact and the burden is on the State to prove by clear and convincing evidence that consent was obtained voluntarily. *Jackson v. State*, 77 S.W.3d 921, 928 (Tex. App.—Houston [14th Dist.] 2002, no pet.). To determine whether this burden was met, we examine the totality of the circumstances. *Gutierrez*, 221 S.W.3d at 686-87; *Jackson*, 77 S.W.3d at 928.

In its appellate brief, the State asserts that "Appellant handed the cell phone to Detective Ramirez voluntarily which was with his consent". But contrary to this argument, the record does not contain clear and convincing evidence showing that Appellant voluntarily consented to Detective Ramirez taking his phone.

Detective Ramirez provided the following testimony at the motion hearing:

Q. [D]id you suggest to [Appellant] to send you the videos?
A. I suggested that he give me consent to go in and do what I needed to do in order to obtain them.
Q. Did he give you that consent?
A. No.
Q. Okay. So is it correct to say to you there was an involuntary seizure at that point?
A. Well, when he refused to consent, I needed to secure whatever evidence may be on the phone. So, yes, at that point I seized it in order to preserve whatever was on the device.

Detective Ramirez provided the same description of events in his warrant affidavit and said that Appellant "refused to provide [Ramirez] with consent to search the

11

phone." Likewise, in the audio recording, Appellant clearly can be heard refusing to consent to the search of his phone and instead opting to have Detective Ramirez seize the phone while awaiting a search warrant. Even when viewed in the light most favorable to the trial court's ruling, this evidence does not support the conclusion that Appellant voluntarily consented to Detective Ramirez's seizure of his phone.

## B. Exigent Circumstances

The State also argues "[t]here was exigent circumstances [sic] and urgency to obtain [Appellant's] phone, due to the ongoing Snapchat entries being deleted." The record is devoid of any evidence presented to the trial court or on appeal showing the specific details of the Snapchat application with respect to automatic deletions of relevant data from either Snapchat's records or from Appellant's phone.

The State can meet its burden to show that a warrantless seizure was reasonable by establishing (1) the existence of exigent circumstances, and (2) that the officer had probable cause for the seizure. *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013); *Gutierrez*, 585 S.W.3d at 609. Exigent circumstances are shown if the risk of an item's disappearance before a warrant may be obtained outweighs the suspect's interest in possession. *Gutierrez*, 585 S.W.3d at 609; *see also Turrubiate*, 399 S.W.3d at 151 (exigent circumstances include "preventing the destruction of evidence or contraband"). But the "mere possibility that evidence may be destroyed does not give rise to a finding of exigent circumstances." *Turrubiate*, 399 S.W.3d at 153 n.4 (citing *United States v. Menchaca-Castruita*, 587 F.3d 283, 295-96 (5th Cir. 2009)).

Whether a law enforcement officer faced an emergency that justified acting without a warrant is a case-by-case determination based on the totality of the

circumstances. *Gutierrez*, 585 S.W.3d at 609. And whether an exigency justifies a warrantless seizure depends, at least in some measure, "upon what facts were actually 'available' to the officer" when he conducted the seizure. *State v. Garcia*, 569 S.W.3d 142, 149 (Tex. Crim. App. 2018). In assessing the reasonableness of an officer's actions, the reviewing court should take into account not only the facts known to the officer but also "'the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" *Id*. at 150 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). An officer's subjective motivations for conducting a warrantless search are irrelevant to the exigency analysis. *Id*. "[I]t does not matter if the officer did not actually infer that he was faced with an exigency; if the known facts objectively support the existence of an exigency, the search should be upheld." *Id*. at 151.

The State-invoked exigent-circumstances exception recognizes two relevant routes to proving an exception to the warrant requirement: (1) evidence that will naturally dissipate (*see*, *e.g., McNeely*, 569 U.S. at 142) and (2) evidence that may be destroyed via "affirmative conduct" (*see*, *e.g., Turrubiate*, 399 S.W.3d at 151-55). Here, the record is devoid of any evidence presented to the trial court or on appeal showing the specific details of the Snapchat application with respect to automatic deletions of relevant data from either Snapchat's records or from Appellant's phone; therefore, no fact sufficiently (or even arguably) supported Officer Ramirez's supposedly reasonable belief in "the existence of an exigency", particularly in light of the fact that he seized Appellant's phone three days after the alleged crime. *See Garcia*, 569 S.W.3d at 151; *compare Tata v. State*, 446 S.W.3d 456, 469 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (exigent circumstances existed for fire department investigators to enter a building immediately after extinguishing a fire) *with Steagald v. United States*, 451 U.S. 204, 222 (1981) (no

exigency when officers knew the address of the house to be searched two days in advance); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 358-59 (1977) ("The agents' own actions, however, in their delay for two days following their first entry, and for more than one day following the observation of materials being moved from the office, before they made the entry during which they seized the records, are sufficient to support the District Court's implicit finding that there were no exigent circumstances in this case."); and *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986) ("Moreover, the officer's own testimony belies their claim of exigency in that they did not secure the area and waited two days to procure a warrant."). We are aware of no cases in which a three-day delay evidences exigency, particularly where there is no showing that the information at issue cannot be recovered from an alternative source. *Cf. Michigan v. Tyler*, 436 U.S. 499, 511 (1978) (holding entry into the burnt out structure "shortly after daylight" the morning it was extinguished was sufficiently exigent while subsequent entries "were clearly detached from the initial exigency and warrantless entry"). Therefore, we analyze this case under the "affirmative conduct" prong of exigent circumstances.

In 2013, the Texas Court of Criminal Appeals examined the exigent-circumstances exception in a case involving an officer's warrantless entry into a residence.[3] *See Turrubiate*, 399 S.W.3d at 151-52. The defendant in *Turrubiate* was at his home when a Texas Department of Family and Protective Services investigator arrived to investigate allegations of marijuana use at the home. *Id*. at 149. The investigator knocked on the door and the defendant opened it; the

---

[3] Although *Turrubiate* analyzes the exigent-circumstances exception in the context of a warrantless search, the same principles apply to warrantless seizures. *See, e.g., Gutierrez*, 585 S.W.3d at 609; *Crayton v. State*, 485 S.W.3d 488, 501 (Tex. App.—Texarkana 2016, no pet.).

investigator "noticed a strong odor of marijuana emanating from the home." *Id.* The investigator later returned to the home with a police officer; again, the investigator knocked on the door, the defendant opened it, and there was "a strong odor of marijuana." *Id.* Determining that entry was necessary to "prevent [the marijuana] from being destroyed", the officer forcibly entered the defendant's home. *Id.*

Relying on *Kentucky v. King*, 563 U.S. 452 (2011), the court stated that the exigent-circumstances exception based on the destruction of evidence "required that the record show proof of imminent destruction based on ***affirmative conduct***". *Turrubiate*, 399 S.W.3d at 153 (emphasis added). Concluding that this showing was not met, the court noted that the only evidence of exigent circumstances was (1) the odor of marijuana, and (2) the defendant's knowledge that a police officer was at his residence. *Id.* at 154. Because "nothing in the record suggest[ed] that destruction of evidence was imminent under the circumstances", the exigent-circumstances exception did not support the officer's warrantless entry into the defendant's home. *Id.* at 154-55.

We recently applied the exigent-circumstances exception in *Gutierrez*, 585 S.W.3d at 610. There, the defendant's phone was similarly seized during a meeting with a detective. *Id.* Testifying at the hearing on the defendant's motion to suppress, the detective said he "thought it was important to seize" the defendant's phone because the complainant (a minor) had stated to her grandmother that the defendant had taken nude pictures of her using a cell phone. *Id.* Describing his meeting with the defendant, the detective testified that, when he asked the defendant for his phone, the defendant asked if he could get important numbers off the phone. The detective said he walked around the table and observed the defendant "in the gallery section of his phone". *Id.* The detective

said the defendant "switched back to the contacts" section of the phone before handing it to the detective. *Id.*

Viewing the evidence in the light most favorable to the trial court's ruling, we concluded that the court could have found that the defendant "was manipulating the contents of the gallery section of his phone." *Id.* Therefore, "the State showed exigent circumstances for seizing the phone because appellant had control over easily disposable evidence." *Gutierrez*, 585 S.W.3d at 610. The court's analysis included law enforcement's subjective observations of the defendant therein performing a furtive act related to the precise evidence at issue that (under the circumstances of that case) supported the officer's reasonable belief in "the existence of an exigency". *Id.* Without a comparable fact yielding a comparable finding, our holding in *Gutierrez* would have been incorrect under *Garcia*. *See Garcia*, 569 S.W.3d at 151.

Guided by these decisions, we reject the State's contention that the exigent-circumstances exception applies here with respect to Detective Ramirez's warrantless seizure of Appellant's phone. As we discussed above, the *Turrubiate* court noted that this exception requires "proof of imminent destruction based on ***affirmative conduct***". *Turrubiate*, 399 S.W.3d at 153-55 (emphasis added). Concluding that this showing was not made, the court emphasized that no evidence showed that the destruction of evidence was imminent. *See id.* In contrast, the evidence in *Gutierrez* supported an inference that the defendant was taking affirmative steps to destroy evidence on his phone. *See Gutierrez*, 585 S.W.3d at 610. Specifically, the detective testified that, when he walked around the table to observe the defendant getting certain numbers from his phone, he saw the defendant in his phone's photo gallery. *Id.*

Here, unlike *Gutierrez*, the record does not contain any evidence showing or

16

permitting an inference that Appellant was taking affirmative steps to destroy evidence on his phone. The record shows that the following facts were available to Officer Ramirez when he seized Appellant's phone:

- After the robbery, Appellant posted a video to his Snapchat account showing officers investigating the incident *after* the incident had occurred.

- The suspects entered the restaurant through the restaurant's back door, which Appellant left unsecured while he was throwing away the trash.

- During his meeting with Detective Ramirez, Appellant said his manager instructed him to take the trash out that night.

- Some of the other restaurant employees "seemed suspicious" regarding Appellant's involvement in the incident. The restaurant's manager said it was against company policy to leave the back door unsecured and denied instructing Appellant to take the trash out that night. A sign on the restaurant's back door said it was not to be opened after dark.

- When asked about the Snapchat video during his meeting with Detective Ramirez, Appellant said he did not have the video because Snapchat "deletes itself" after 24 hours. Appellant said he did not have any other videos of the incident on his phone.

As in *Turrubiate*, these facts and the reasonable inferences that may be drawn from them do not suggest that Appellant was taking affirmative steps to delete the contents on his phone. At most, this evidence shows that (1) Appellant posted a Snapchat video taken *after* the robbery occurred, and (2) some of the restaurant employees were suspicious regarding Appellant's involvement in the incident. Responding to Detective Ramirez's request to obtain the Snapchat videos, Appellant explained that Snapchat "deletes itself" after 24 hours. Appellant's Snapchat videos of the incident, which were taken four days before his meeting with Detective Ramirez, fell well outside this 24-hour period. Although these facts suggest that Snapchat, by its own functions, may have been deleting content that

17

Appellant had posted, they do not indicate that Appellant himself was actively deleting evidence.

Testifying at the motion hearing, Detective Ramirez said he "didn't have a whole lot of knowledge" regarding Snapchat at the time of his investigation but knew its contents "deleted after a certain amount of time." Detective Ramirez stated that he believed "the user was able to predetermine that time on how long the image or video lasts." Detective Ramirez also stated that the Snapchat user "can actually keep the image or the video just like you would on any other app[lication], without having it expire within a certain amount of time."

The reasonableness of an officer's beliefs regarding the exigencies of a situation are issues of fact. *See Douds v. State*, 434 S.W.3d 842, 847 (Tex. App.—Houston [14th Dist.] 2014), *rev'd on other grounds*, 472 S.W.3d 670 (Tex. Crim. App. 2015); *see also Garza v. State*, No. 14-15-00902-CR, 2016 WL 7177710, at *3 (Tex. App.—Houston [14th Dist.] Dec. 8, 2016, no pet.) (mem. op., not designated for publication). Although Detective Ramirez may have believed that Appellant had the ability to "predetermine" how long a Snapchat video would remain on his phone, this belief does not reasonably support a conclusion that Appellant would have engaged in affirmative conduct to delete information from his phone (much less that such information was unrecoverable via another means). Under the dissent's view, a person's possession of allegedly relevant information alone would be sufficient to trigger exigent circumstances and justifiably divest the People of the right to be free from warrantless seizures of their personal property despite the plain language of the Fourth Amendment (and Article I, section 9 of the Texas Constitution).

The dissent's attempt to curtail such constitutional violations via a recognition that "the defendant knew that he was a suspect at the time of the

18

seizure" is unpersuasive. Under this standard, police officers seeking to warrantlessly seize the People's cell phones need only tell them that they (or perhaps even loved ones) are suspects in a crime. Such a test would arm law enforcement with a weapon to defeat the Fourth Amendment as a matter of law, thereby rendering it effectively null with respect to protecting the People's property from unreasonable seizures.

In sum, the record does not contain any evidence showing that Appellant, by his affirmative conduct, was actively deleting evidence on his phone. *See Turrubiate*, 399 S.W.3d at 153-55; *see also Gutierrez*, 585 S.W.3d at 610. Detective Ramirez's beliefs regarding Snapchat, though reasonable, do not by themselves establish the existence of exigent circumstances. Therefore, Detective Ramirez's warrantless seizure of Appellant's phone did not fall within the exigent-circumstances exception. We sustain Appellant's sole issue and hold that the trial court erred in denying Appellant's motion to suppress.

## IV. Harm

Because the warrantless seizure of Appellant's cell phone violated Appellant's Fourth Amendment rights, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). This inquiry examines all evidence derived directly or indirectly from the warrantless seizure of Appellant's phone. *See Thornton v. State*, 145 S.W.3d 228, 232 (Tex. Crim. App. 2004) (en banc) (under the "fruit of the poisonous tree" doctrine, any evidence derived directly or indirectly from illegal government action must be excluded at trial).[4]

---

[4] We note that, under certain doctrines, evidence discovered and seized following an

19

For this analysis, we do not focus on the propriety of the outcome of the trial; instead, we calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *See Tillman v. State*, 376 S.W.3d 188, 202 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In essence, we examine whether there is a reasonable possibility that the error, within the context of the entire trial, moved the jury from a state of non-persuasion to one of persuasion on a particular issue. *See Washington v. State*, 567 S.W.3d 430, 443 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (citing *Davis v. State*, 203 S.W.3d 845, 849 (Tex. Crim. App. 2006)).

Based on our review of the record, we cannot determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction. Text messages obtained from Appellant's cell phone were the only evidence directly tying Appellant to the robbery. The day before the robbery, the following texts were sent and received from Appellant's phone to a different phone number:[5]

---

instance of unlawful police conduct may still be admissible. *See, e.g., Wehrenberg v. State*, 416 S.W.3d 458, 465 (Tex. Crim. App. 2013) ("the independent source doctrine provides that evidence derived from or obtained from a lawful source, separate and apart from any illegal conduct by law enforcement, is not subject to exclusion"); *Monge v. State*, 315 S.W.3d 35, 40 (Tex. Crim. App. 2010) (evidence that is "sufficiently attenuated" from the unlawful police conduct "is not considered to have been obtained therefrom"). But the burden is on the State to prove these doctrines' applicability. *See Monge*, 315 S.W.3d at 40; *Sweeten v. State*, 693 S.W.2d 454, 458 (Tex. Crim. App. 1985) (en banc).

Here, the State does not argue that the evidence obtained from Appellant's phone would have been admissible even if this court concluded that it was preceded by an instance of unlawful police conduct. Instead, the State's primary argument appears to be that "Appellant's cell phone was not seized" because "Appellant voluntarily gave it to Detective Ramirez". Therefore, our harm analysis considers all evidence that bears a causal connection to the unlawful seizure of Appellant's phone. *See State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) (en banc) ("[o]nce the illegality and its causal connection to the evidence have been established, the evidence must be excluded") (citing *Garcia*, 829 S.W.2d at 798).

[5] Testifying at trial, Detective Ramirez stated that he was unable to locate any matches for the number with whom Appellant was communicating.

| Received | "Nah we just trying to come hit it u come to us later to get ur check . . ." |
|---|---|
| Received | "And . . . we Goin put all yall n da freezer" |
| Sent | "Do it however yall want just come when I saw come" |
| Sent | "Lobby close at nine" |
| Received | "OK so we come before it close just tell me when we need to head up there" |
| Sent | "How yall wanna come in maane [sic] front or back" |
| Received | "The back" |
| Sent | "Bread in the safe and register" |

The following texts were sent and received from Appellant's phone to that same number the night of the robbery:

| Received | "He don't won't [sic] her tripping out he gotta get to her to snatched her up where the manager" |
|---|---|
| Sent | "Manager around the register area" |
| Sent | "Make sure that headset off her head . . ." |
| Sent | "If she dnt [sic] in like 14 mins Ima open it" |
| Received | "Play good now" |

Aside from these text messages, the only other evidence tying Appellant to the robbery was circumstantial at best. Appellant's manager at the restaurant, Tammie Bell, testified that Appellant took the trash out in violation of the restaurant's policy against opening the back door after dark. Bell stated that the suspects were able to enter the restaurant because Appellant opened the back door. But Bell also acknowledged that employees regularly exited the back door to smoke cigarettes. Bell stated that Appellant acted like himself after the robbery and was cooperative. And according to the testimony of another restaurant employee, Josephina Oboy, Appellant asked Bell if he could take the trash out and Bell told him, "okay".

21

Against this backdrop, there is a reasonable possibility that the text messages obtained from Appellant's phone moved the jury from a state of non-persuasion to one of persuasion on the issue of Appellant's guilt. *See Washington*, 567 S.W.3d at 443. Therefore, the trial court's admission of evidence obtained from the warrantless seizure of Appellant's phone was not harmless error. *See* Tex. R. App. P. 44.2(a).

## CONCLUSION

We reverse and remand for a new trial.


/s/    Meagan Hassan
       Justice


Panel consists of Justices Christopher, Bourliot, and Hassan (Christopher, J., dissenting).

Publish – Tex. R. App. P. 47.2(b).